## DECEMBER TERM, 1843.

### MARY E. A. SHOTWELL *v.* ROBERT SHOTWELL.

Where, upon the bill of the wife against the husband, a decree *a vinculo matrimonii* has been granted, the mere omission in that decree, to provide for the *alimony* of the wife, cannot affect the wife's right to such a provision, at a subsequent time, by a separate and distinct proceeding.

A circuit court, having decreed a divorce *a vinculo matrimonii* at the instance of the wife, the Superior Court of Chancery has jurisdiction of a· bill by the divorced wife against the husband, to have alimony allotted to her.

A decree for alimony *results* from the decree for a divorce, but is not *identical* with it, or a necessary part of it.

THE complainant alleges in her bill, that she and the defendant intermarried in this State, in 1826 : that she lately filed her bill, in the Circuit Court of Lowndes county, against the defendant, for a divorce from the bonds of matrimony, for causes of adultery, and that that Court, for those causes, by decree, rendered in January, 1840, granted a decree of divorce, *a vinculo matrimonii.* That by said decree no provision was made for her alimony, nor did that question enter into the pleadings in that cause, and no account was taken of the property which Shotwell held, as trustee of the complainant, but that question was reserved for the disposition of this Court : that at the time of the marriage the defendant was possessed of the following property, *to wit :* two male slaves, worth about $1000 ; that in about twelve months thereafter, the complainant's father, L. B. Taliafferro, gave defendant, in consideration of his marriage, and as a marriage *advance* to the complainant, eight slaves, and other property specified in the bill, worth, at that time, about $2750, and afterwards paid to her, for the use of her husband, $350 : that in December, 1837, the defendant purchased six other negroes, which were chiefly paid for with the proceeds of the·joint labor of the complainant, the defendant, and the slaves : that she made defendant, during their coverture, until the unhappy causes of difference occurred, an economical and good wife : that by the aid of· her industry, they had amassed a considerable fortune, and·that at the time of the decree of divorce, the defendant was worth $13,000,

consisting of lands, negroes, &c. On account of which she charges an allowance should be made to her for alimony, and that the defendant should be held a trustee, and responsible for the portion of the estate to which she is entitled : that the defendant refuses to make any allowance to her, &c. She prays that the defendant set forth in his answer his effects, &c., and finally a decree for alimony and for her equitable property.

To this bill the defendant demurred, and set out two special causes.

*First.* That it appeared by the bill, that the complainant was, and had been for a long time, absolutely and finally divorced by a court of competent jurisdiction, from the defendant, and her intermarriage with him unconditionally annulled.

*Second.* That the Court had no jurisdiction for a bill of alimony, after a decree of divorce *a vinculo matrimonii* had been rendered.

The case was submitted to the Chancellor, by consent, upon written arguments.

*George Calhoun,* in support of the demurrer.

A bill was heretofore filed by the complainant against the defendant, before the present Chancellor of this State, sitting at Columbus, similar to the present, which was dismissed. To that bill there was a demurrer, for causes similar to those assigned in this demurrer ; and as the solicitors for the defendant made an extensive investigation of the subject in that case, I beg leave to call the attention of your Honor to their brief, herewith enclosed.

This bill assumes the position, not taken in that, that the defendant holds the property advanced to him by complainant's father, and his other property, in trust for her, to the extent of an equitable allowance to her for alimony. The Court of Chancery in England has no jurisdiction in cases for alimony, except to enforce the decrees of the Spiritual Court, or upon cases of litigation growing out of alimony, already decreed. In this State the statute gives concurrent jurisdiction to the Chancery Court, and circuit courts, to grant divorces and decree alimony, and it expressly confers the power to decree alimony on the court which grants the *divorce.* Hence, we infer that this Court has no jurisdiction over the subject

of alimony, except on a bill for a divorce. For if the Chancery Court has no original jurisdiction to decree it, in England, on the ground that it is a mere incident to a divorce, it is difficult to perceive on what principle this Court can assume it, after another court has granted the divorce. Certainly the same rules which apply to man and wife in England, apply to them in this country. On this subject, and for the general doctrine applicable to this case, see 2 Story's Com. on Eq. 648, and note 3, et seq. ; 2 Vesey, 195, and authorities there cited ; Clancy, on Married Women, 549, 550 ; Roper, on Husband and Wife, 278 ; 6 John. Ch. Rep. 91.

I cannot perceive upon what principle of reason or authority the husband can be held to be a trustee for the wife, after a divorce, in regard to his estate. If the wife has a separate estate, which comes to the possession of the husband, he is regarded as a trustee for her ; but in this case, so far from alleging in the bill that she has a separate estate in the property given by her father to defendant, the complainant alleges that it was given to him in consideration of the marriage, and as a marriage advance to complainant. Of course it vested in him. See 1 Bacon's Ab. 290 ; Clancy, on Married Women, p. 2. As to the manner in which the wife can acquire a separate estate, I beg leave to refer the Court to Clancy, on Married Women, under the head of separate estate of the wife, (the book is not now before me,) where he enumerates the different modes of creating it, and it will be seen complainant has no such interest in the negroes given by her father to defendant. It is held, as will be seen by reference to the authorities referred to, that alimony is a mere incident to a divorce. The divorce is the principal, and draws with it alimony as an incident, and the Circuit Court having acted upon the one subject, necessarily had before it the other ; its decree, therefore, is a bar to all proceeding on the subject, in any other court. If not, however, and anything was left undone, that is the only court which can complete it. The doctrine, if established, that after a decree of divorce, *a vinculo matrimonii*, the wife can at all times, and in all courts, sue the husband for alimony, would open a new door to vexatious litigation and multiplicity of suits, unknown, it is believed, at this time to the law.

But again : the record of the proceedings on the bill for divorce (made part of complainant's bill), shows that full provision was made by defendant for the support of complainant. His answer charges that said provision was accepted by her, and her father as next friend, in lieu of a decree for alimony ; and prays, if alimony is decreed, that the deed conveying the negroes and bank stock, for her benefit, be set aside. The fact that she accepted the divorce, without objecting to this provision, not only shows a good reason why that court did not decree alimony, but also that she was provided for and satisfied. This property she yet holds, and although this Court would have jurisdiction over this property, to enforce this settlement, it is believed it extends no farther over the subject.

Neither in justice, equity, nor law, is the complainant, as appears from her own bill, entitled to any further relief.

The following is the argument referred to by Mr. Calhoun, and made part of his brief :

The defendant demurs, first, because the bill shows an absolute unconditional final divorce, *a vinculo matrimonii*, long since decreed between the parties.

2d. Because the bill shows that the divorce was granted by a different court, of concurrent jurisdiction ; and in divorces of that description, alimony is a mere incident, and properly cognizable at the time ; and a subject that might and ought to have been *there* litigated. This Court will not now take jurisdiction of the cause ; for, in all cases of concurrent jurisdiction, the court which first had possession of the subject matter must determine it conclusively. The Court is bound to inquire, in every case, whether the facts presented by the record give jurisdiction. 3 Howard's Rep. 34. This bill seeks to recover alimony. What is alimony ? It is, says Blackstone, " that allowance which is made to a *married woman* out of her *husband's* estate. 1 Black. Com. 441. In a legal sense, it is taken for that allowance which a *married* woman sues for, and is entitled to, *upon* separation from her husband." 1 Tomlin's Law Dictionary, 67, title Alimony, Baron and Feme, XI. 1 Jacobs's Law Dictionary, 80. In England, it appears that alimony is allowed only where a separation is decreed. *Rhame* v. *Rhame*, 1 M'Cord, Ch. R. 205. In cases of divorce *a mensa et*

*thoro,* the law allows alimony. 1 Black. Com. 441. "On these separations from *bed and board,* the courts intrusted with the jurisdiction of the subject will make suitable provision for the support of the wife and children, &c. 2 Kent's Com. 127.

In England the jurisdiction of cases of alimony belongs to the ecclesiastical courts. Baron and Feme, 434 ; 1 M'Cord, Ch. R. 205 ; *Burtes* v. *Burtes,* Hopk. 478. And in that country, in divorces *a vinculo matrimonii,* the marriage is declared *absolutely void.* 1 Black. Com. 440. The marriage is pronounced null, as having been absolutely unlawful *ab initio.* 1 Black. Com. 440. Divorces, like the one mentioned in the bill *a vinculo matrimonii* for adultery, could not be granted by an act of Parliament in England. 1 Black. Com. 441. Accordingly, we will find no precedent for this bill in the English books. No alimony was ever granted in England, in a case of divorce *a vinculo matrimonii.* In divorces *a mensa et thoro* it was different, for such a divorce does not *dissolve* the marriage, though it separates the parties, and establishes different interests between them. 5 Pickering's Rep. 461. "A divorce *a mensa et thoro* only, does not *dissolve the marriage,* for the parties can live together as man and wife again without any new ceremony." 2 Pickering, R. 316. "If a husband and wife are divorced *a mensa et thoro,* (and a legacy is left to her,) the husband may release it, for such divorce does not *dissolve* the marriage." 2 Roll's Ab. 301 ; Cro. Eliz. 908 ; Baron and Feme, 433 ; 1 Jacobs's Law Dictionary, 287, and cases cited. The marriage continues, and the wife, after such divorce, shall have dower of her husband's lands. Baron and Feme, 433. If a baron and feme are divorced *a vinculo matrimonii,* dower ceaseth, but not if it be only *a mensa et thoro.* 1 Inst. 32 a, Hilliard's Ab. 61. "The right of a husband in the land of his wife, being an estate *during coverture,* is terminated by a divorce *a vinculo matrimonii.*" 8 Conn. R. 541; 2 Pickering, 316 ; 4 Amer. C. L. Rep. 535. When the relation of marriage is *dissolved* by the death of the husband, the wife is restored to all her rights, which were lost by the coverture ; when it is dissolved by a divorce *a vinculo matrimonii, the law is the same.* 8 Conn. R. 541 ; 4 Amer. C. L. 535. On the dissolution of a marriage, either by the death of the husband, or a *divorce a vinculo matrimonii,* choses in

action, not reduced to possession during the coverture, remain the property of the wife. *Legg* v. *Legg*, 8 Mass. R. 101 ; *Barber* v. *Root*, 10 Mass. R. 260 – 265. It is clear, therefore, that the divorce heretofore decreed between these parties, has the same effect as the *death* of one of them ; they are to each other as if *dead*, so far as all the conjugal relations are concerned, and the jurisdiction of this Court is concerned. Indeed, marriage itself is but a civil contract. 1 Black. Com. 433. " Taking it in this light, the law treats it like it does all other contracts." Idem. 433. *After* the contract is *annulled*, the relation of man and wife no longer exists ; all connection between them has ceased and determined. But the law of England concerning divorces, is chiefly the ecclesiastical law, and not the common law of that country ; and it has never been adopted in this State. Our statutes concerning divorces are original regulations, and they do not adopt or introduce the English law of divorces. *Burtes* v. *Burtes*, Hopk. 478 ; 1 Equity Dig. 262, sec. 4. Alimony may be given immediately, as on a divorce under the statute of Indiana, but no court has any original jurisdiction to allow it. Hence, if an adequate provision be not made by the court granting the divorce, no other court can supply the deficiency. *Fishli* v. *Fishli*, 1 Black. 361 ; Conover's Digested Index, 202, sec. 8.

It is precisely the same under our statute concerning " Divorces and Alimony." It is enacted, that " *when* a divorce shall be decreed, &c. &c., the court shall, and may in every case, take such order touching the care and maintenance of the children of that marriage ; and also, touching the maintenance and ALIMONY of the wife, or any allowance to be made to her, *and if any*, the security to be given for the same, as, from the circumstances of the parties, may be fit, equitable, and just." Rev. Code, 229, sec. 7 ; Hutch. & How. 331, sec. 17. The statute, by the first section, gives to the Court of Chancery jurisdiction of " all causes of divorce," by the act directed and allowed, and, by the seventh section, makes " alimony, if any," an incident, *when* the divorce shall be decreed, and that the *court granting the divorce* shall take such *order* touching the alimony as may be equitable and just. *There is no statute in this State which gives any court separate jurisdiction in*

*cases of alimony*. By the revised constitution it is provided that the legislature may give to the circuit courts of each county equity jurisdiction in all cases of "divorce." Const. art. 4, sec. 16. It was given by the act of May 2d, 1833. Hutch. and How. 480, sec. 3. Neither the constitution nor act of 1833 speak of alimony, and the act of 1822 treats of it only as an incident to the divorce, and to be granted *when* the divorce is decreed.

"No court has any original jurisdiction to give a wife a separate maintenance ; but it may be given *immediately* as on a *supplicavit* in chancery, or a divorce *a mensa et thoro propter sacriticum* in the Ecclesiastical Court." *Bale* v. *Montgomery*, 2 Vesey, Ch. R. 195 ; Ham. Eq. Digest. 200.

As has been before stated, our statute laws concerning divorces are original regulations, and in England no alimony was ever granted by any of the courts, in divorces *a vinculo matrimonii*. In the United States the statute law often provides for a divorce, for causes which in England render the marriage void *ab initio*, (Hilliard's Ab. 61,) and as by our statute, for causes which in England would not authorize a divorce from the bonds of matrimony. In New York, and in Massachusetts, alimony is granted upon a divorce *a vinculo matrimonii*, but it is by express statute, and is decreed *at the time*, as a mere incident to the divorce. N. Y. Revised Statutes, vol. 2, p. 145 ; 2 Kent, Com. 99 ; Revised Statutes of Massachusetts, 1835, part 2, tit. 7, ch. 76, sec. 27, 28. The cases, therefore, reported in Paige's Chancery Reports, and in Pickering's Massachusetts Reports, are to be understood as having reference to the *statute law*, as the second ground of demurrer. The divorce was obtained before a circuit court Judge, and in all cases of concurrent jurisdiction, the court which first had possession of the subject-matter must determine it conclusively. *Smith* v. *M'Iver*, 7 Wheaton, 532 ; 5 Cond. Rep. 662 ; 1 Ashmead's Rep. 171 ; *Thompson* v. *Hill*, 3 Yerger, 167 ; 2 Munford, 34 ; 2 Equity Digest, 24. And so far is this principle extended, that "when a wife obtained in Kentucky a decree for a divorce, with an allowance for alimony in her husband's property, in that State, it was held in Indiana, that, though the maintenance was inadequate, she could make no application to the courts of the latter

State for any additional *provision* out of her husband's real property located within Indiana.    The matter had been finally determined by a competent tribunal ; it is considered as at rest forever.    And this principle embraces not only *what was actually determined, but every other matter which the parties might have litigated in the cause. Fishli* v. *Fishli*, 1 Black. 361 ; Conover's Dig. Ind. 202.

The law abhors a multiplicity of suits.    Besides, by our statute, alimony is granted by the court decreeing the divorce, by a mere "order" to that effect.    "When" a divorce is granted, &c., *the* court shall and may take such *order*, &c., is the language of the statute.*

*Stephen Cocke*, for complainant, in support of the bill.

The case presented is the following.

The complainant filed her bill for a divorce *a vinculo*, against the defendant for adultery, in the Circuit Court of Lowndes county. On the 10th day of January, 1840, that Court decreed the divorce *a vinculo*, founded on the adultery charged and proved.

In that case there was no other question presented by the pleadings or proofs, and nothing else was determined.

She now files her present bill in the Superior Court of Chancery for alimony, and to obtain what may be found to be her equitable property, consequent upon the violation of the nuptial contract by the husband.

To this bill the defendant demurs on the grounds :

1st. That, by the said decree of the Circuit Court, the said marriage is now, and has been, dissolved and annulled.

2d. That the Chancery Court has no jurisdiction of this cause, and is bound to dismiss the bill.

For the complainant it is contended that the demurrer, confessing as it does the allegations of the bill, presents as equitable the monstrous position that, in marriage causes, a husband by the marriage acquires title to all the personal property of the wife, and that by committing the crime of adultery, he gives her cause of divorce *a vinculo*, which, if she obtains, throws her a beggar on the world, and leaves him entitled, not only to the property she placed in the nuptial stock with its increase, but also all that which her industry and good management contributed to amass.   Whereas it is em-

* NOTE. This brief was prepared by Messrs. *Hains* and *Harrison*, and adopted by Mr. *Calhoun.*

phatically true, that no man can be permitted to make property by the violation of a duty, the commission of a crime, or the breach of a contract.

By the adultery, the defendant submits himself and his property to the jurisdiction of the Court of Chancery, and when the husband has violated the marriage contract, or been guilty of an act which entitles the wife to a decree for a divorce, or for a separation and alimony, the wife is equitably entitled to a restitution of the property which the husband holds by virtue of his marital rights. *Vandoza* v. *Vandoza*, 6 Paige, R. 366.

The cause for divorce having been decided in the Circuit Court, the demurrer to the present bill is founded on the idea, that those proceedings present a bar to the inquiries sought by the present bill.

The matters of the demurrer may well be considered of by reference to the statutes of Mississippi, and the constitution of this State.

We subscribe to the doctrine that our statutes concerning divorces are original regulations, and that they do not adopt the English law of divorces ; *Burtis* v. *Burtis*, Hopk. R. 557 ; they being of ecclesiastical cognizances. Indeed, so diversified are the causes for divorces in different countries, and so variant are the rights and duties in the marital life under different municipal jurisdictions, that it could not be otherwise. In every country the rights of property, and other allowances consequent on the dissolution of the marriage tie, must depend on the local policy of the particular country. In Mississippi, whatever may be her defections in other respects, her tribunals have not yet given sanction to the doctrine that it is in the power of the husband, by committing the crime of adultery, to acquire to himself all of his wife's property, and leave her destitute and a beggar on the world. We think, however, we may regard the decisions of our sister States, as entitled to much respect on the subject of the rights of the wife, consequent on a divorce *a vinculo*, for the criminal or improper conduct of the husband. In cases of concurrent jurisdiction, a complainant may come into chancery for relief, if he thinks proper to do so, subject to the power of the Court to refuse him his costs, when he files his bill unnecessarily. *Mitchell* v. *Oakley*, 7 Paige, R. 68 ; 4 ib. 647,

When the party's remedy was in another court, but at the time of trial such remedy is not understood, nor ascertained, the jurisdiction of equity is maintainable. *Bynum, et al.* v. *Sledge*, 1 Stew. and Porter, R. 135.

Upon a decree for divorce *a vinculo*, the property which came to the husband by means of the marriage will be restored to the wife. *Dean* v. *Dean*, 5 Pick. R. 428.

The Court will order the husband's property to be applied to the support of his wife and family, not only during the litigation, but after the decree of divorce. *Kirby* v. *Kirby*, 1 Paige, R. 261.

On divorce for adultery, the wife is entitled to alimony. *Graves* v. *Graves*, 2 Paige, R. 62.

But to the statute laws of Mississippi. These laws, as compiled by Howard and Hutchinson on the subject of divorces, with reference to the jurisdiction of the courts, present the subject in too confused a form for satisfactory investigation. Our inquiries in this respect will be better directed by referring to Poindexter's code, and the acts of the legislature of 1833.

By the act of the 14th of June, 1822, revised code, ch. 36, p. 228, sec. 1, the *Court of Chancery* shall have jurisdiction of all causes of divorce ; sec. 2, the like process and course of practice and proceedings shall be had and pursued in causes of divorce as are usually had and pursued in other causes in chancery, except the answer of the defendants shall not be under oath. At sec. 7, p. 229, a distinct, independent, and enlarged power is given to the Court (that is, the Court of Chancery), to take such order touching the maintenance and alimony of the wife, or any allowance to be made to her, and of any of the security to be given for the same, as from the circumstances of the parties, and *the nature* of the case, may be fit, equitable, and just. But no such provision is made as to the power of the circuit courts.

By the revised constitution, judicial department, sec. 16, a separate Superior Court of Chancery shall be established with full jurisdiction in all matters of equity, provided, however, the legislature may give to the circuit courts of each county equity jurisdiction, in all cases where the value of the thing or amount in controversy does not exceed four hundred dollars ; and also in all cases of divorce and for the foreclosure of mortgages.

Shotwell v. Shotwell.

The legislature of 1833 (consolidated acts from 1824 to 1838, p. 404, sec. 6), enacts that the said circuit courts shall have and possess original and concurrent jurisdiction with the Superior Court of Chancery over all matters, pleas, and plaints whatsoever belonging to or cognizable in a court of equity, when the value of the thing or amount in controversy does not exceed the value of five hundred dollars, also in cases of divorce and for the foreclosure of mortgages ; and such process and course of proceedings shall be had herein as in similar cases are commonly had in the Superior Court of Chancery. This latter provision was intended to indicate only the process and course of proceedings that was given to the Chancery Court by the act of 1822, as above pointed out in sec. 2, revised code, p. 228, and did not contemplate the exercise of the powers designated and pointed out by sec. 7, p. 229, for the reason that the legislature must have foreseen that questions of the equitable property of the wife and her allowance for alimony, might well invite conflict of litigation with other interests and parties, determinable alone by a Superior Court of Chancery, with full chancery jurisdiction ; and besides, the constitution had pointed out a jurisdiction only to declare the divorce, and this was all that was sought or obtained in the case before us in the Circuit Court.

It may be, that in cases of divorce a mensa et thoro, or to make an allowance to the wife during the litigation, or to enable her to prosecute her suit a vinculo, would be within the competency of the circuit courts. But in divorces a vinculo, to fix the permanent alimony of the wife, or in any manner to settle her equitable property, we cannot find was contemplated in the laws as for the jurisdiction of the circuit courts. To include those matters in such an investigation, would usually delay the final hearing of the divorce case for years. It would, in almost every instance, bring into conflict and litigation other interests and other parties.

It is obvious that, by such a divorce, the wife is entitled to re-have the property she brought to the husband, as also alimony. What was the legal or equitable disposition and situation of that property in reference to the claim of others, might be of doubtful intendment both of law and fact, and could not well be determined in a suit for a divorce. Again, the amount of alimony to be allowed to the wife, would essentially depend upon the property-situation of

the husband. Whether the property claimed to be his, was really his or not, would have to be ascertained before alimony could be had of it : this might well affect the interests of others, and bring about a litigation in that behalf, which would take years to settle, and involve amounts greatly beyond $500. The constitutional right of the circuit courts to settle such controversies, might well be questioned ; and during all this time, however gross and improper the conduct of the husband, the just claims of the wife for the separation and for her separate property and alimony, would be delayed and circumscribed with all the restraints of marriage, unless indeed she would consent to relinquish all claims to a comfortable support in the society to which she had been accustomed, and become a beggar. Such a rule of practice is not thought to be consonant with equity, or the just interpretation which should be given to our statute law. Even in cases to foreclose mortgages, when the interests of third persons become involved beyond $500, the circuit courts are believed to have no jurisdiction.

The divorce in the present case, although it was *a vinculo* as to the wife, was only a *mensa et thoro* as to the husband. How. and Hutch. p. 719, sec. 1. Upon the husband, therefore, devolved and continued the duty and obligation to provide for the wife, whether the acquisitions were before or after the divorce. *Kirby v. Kirby*, 1 Paige, R. 261.

We are aware that this rule may be said to be in effect altered by the act which passed after the divorce, in the year 1842.

But we submit whether this act can be allowed to impair any of the rights of the wife, which attached as a consequence of the decreé of the 10th of January, 1840.

It is said, however, that alimony is an incident of the decree of a divorce, and must be settled in the decree dissolving the marriage. It is true, it is an incident ; but it by no means follows that alimony or the equitable property of the wife ought or can be at all times settled with the decree dissolving the marriage. At best it would be a mere rule of practice, and it seems to us, the better and more appropriate practice would be to settle those matters in a separate proceeding, when the restraints of marriage shall have disappeared. At law, the right to recover mesne profits is an incident to the recovery in an action of eject-

ment, yet we all know we have to prosecute a separate action afterwards for the recovery of mesne profits. It is for the reason, that it would greatly embarrass the trial of the ejectment cause, if the other matter was permitted to mingle with it. Much greater would be the embarrassments in seeking to obtain a divorce *a vinculo*, if we were obliged to settle and include in the decree all of the incidents and consequences of the divorce, before an innocent and virtuous woman could free herself from an adulterous husband. There were, however, in the proceedings for a divorce, none of these matters in the pleadings or proofs in that cause. There were no allegations on the subject ; no *res judicata*, as to any of the matters of this present bill.

The rule is, that the judgment of a court of concurrent jurisdiction directly upon the point, is conclusive between the same parties upon the same matter directly in question in another court. But it is not evidence of any matter which came collaterally in question, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument. 1 Phil. on Ev., Library edition, p. 333 ; The Duchess of Kingston's case, 20 Howell, 538.

In considering the effect of a former judgment, it is to be observed, that the judgment can be final only for its own proper purpose and object, with reference to the subject-matter of the suit, and upon the points then put in issue and directly determined. 1 Phil. Ev. 334.

If a court of law having jurisdiction declines to determine a question of set-off, this is not *res judicata*, so as to preclude an inquiry in a court of equity having concurrent jurisdiction. *Hackett v. Connett*, 3 Evid. 73.

To make a decree a good bar in a subsequent suit, it must be shown that the matter of the bill was *res judicata*. Chase's case, 1 Bland. 220.

A decree made upon a bill and answer cannot affect the rights of any of the parties, as to the other matters which were not the subject of litigation in that suit. *Elliot v. Pell*, 1 Paige, 263.

A mistake in a former decree, in a cause where the same persons were parties, but on a point in which their interests at that time were not in litigation, is not conclusive upon the parties in a subse-

quent suit, when that point comes in litigation between them. *Garrett* v. *Day*, 2 M'Cord's R. 27.

In the brief of the solicitor for the defendant, it is stated that the record of the proceedings, on the bill for divorce, made part of the complainant's bill ; shows that full provision was made by defendant for the support of complainant, in charging in his answer that said provision was accepted by her, and her father as next friend, in lieu of a decree for alimony, and proves that the complainant was provided for and satisfied.

We deny that any just provision was ever made by defendant for complainant, or that she was ever in any respect settled with, or satisfied, in that respect. If defendant has made satisfactory provision for complainant, he may well set it up, and avail himself of it, in his answer to the present bill. It is not conceived how any such matter can avail him on his demurrer.

A wife before the decree cannot make any valid agreement as to her allowance of alimony. It belongs to the Court of Chancery to settle, sanction, and allow the amount. *Daggett* v. *Daggett*, 5 Paige, 509.

It is hoped that the Chancellor will look into the matter in the present case, and cause that to be done in the premises which of right and justice ought to be done.

CHANCELLOR. In January, 1840, the complainant obtained a divorce from the bonds of matrimony, against the defendant, in the Circuit Court of Lowndes county, on the charge of adultery. That case proceeded simply for a divorce. The question as to the wife's right to alimony was not in contest. The present bill is filed for the purpose of asserting her claim to alimony ; and to this the defendant has demurred generally. Two grounds are taken in support of the demurrer. 1. That the power of this Court to decree alimony, in any case, depends altogether upon the provisions of the statute upon that subject ; and that, by that statute, the power to make such decree belongs to the court that grants the divorce. 2. That alimony is an incident to, and dependent upon, the decree for a divorce ; and that, as no decree was made by the Circuit Court for alimony, when the divorce was decreed, a separate bill

for that purpose cannot be maintained in this Court. These positions are so nearly the same, that an answer to one will dispose of both. The statute of this State provides that, when a divorce is decreed for adultery, the Court may make such order touching the alimony of the wife, or any allowance to be made her, as from the circumstances of the parties, and the nature of the case, may be fit, equitable, and just. And although I believe it has been usual in practice, to make such order in connection with the decree for a divorce, yet I cannot conceive that the mere omission to do so can affect the wife's right to such a provision, at a subsequent time, by a separate and distinct proceeding. Any other construction of the statute would place the rights of the wife under restrictions too arbitrary to comport with the generous policy of the law. The error of the opposite view, consists in supposing that a bill for a divorce and a claim for alimony are identical, and necessarily constitute one proceeding, and that they are essentially united in the same decree ; whereas the right to alimony is a separate and distinct right *resulting* from the decree for a divorce, but not indentical with it. The wife's right to a provision in such cases, proceeds upon the moral and legal obligation of the husband to furnish her with a competent support, and cannot be justly made *to* depend upon the point of time at which she attempts to assert it. I find no such limitation in the statute, and I certainly will not introduce any by way of construction. The right is founded in the very nature and legal incidents of the marriage contract, by which the husband not only possesses himself of the property of the wife, but obtains dominion over her person. Hence it is, that where the husband, by his cruelty or other misconduct, compels the wife to force herself from him, the courts will carry out this obligation by compelling *him* to set apart a portion of his estate for her support. I am then of opinion, that a separate suit, by bill or petition, may be maintained for alimony, after a decree for a divorce in which such claim was omitted, if there was no express act of the wife waiving her right thereto. This point seems to have been directly decided by the Supreme Court of Pennsylvania, in the case of *M'Karraher* v. *M'Karraher* (3 Yates, Rep. 56). It was held in that case, that the failure of the wife to claim alimony, when the

sentence of divorce was rendered, was no bar to a future application for that purpose. The case of *Julineau* v. *Julineau* (2 Desaus. 45) is also an authority, showing that the decree for alimony is not necessarily an integral part of the decree for a divorce. I also infer, from some examination of the Ecclesiastical Reports of England, that a claim to alimony is not necessarily asserted, at the same time that a sentence of divorce is pronounced ; I find it is frequently, if not usually, made at a different time, and under a distinct proceeding. Such was the case in the suit of *Cook* v. *Cook*, 2 Phillimore, 40 ; 1 Eccle. Rep. 178 ; where a divorce was decreed in Nov. 1811, and proceedings instituted in March, 1812, for the recovery of alimony. The propriety of the proceeding does not appear to have been called in question on account of the lapse of time. Sir John Nicholl said it was usual to make alimony commence from the date of the sentence of separation, and he referred to the case of *Taylor* v. *Taylor*, where the sentence and decree for alimony passed on the same day ; thus showing that it was not usual that both took place at the same time. I cannot doubt that the powers of this Court, as to decreeing alimony, are commensurate with those of the spiritual courts of England. If, then, a separate bill or petition for alimony may be maintained, I can see no reason why it may not be brought in any court having competent jurisdiction, without regard to the court that granted the divorce. There is nothing in the nature of the proceeding which would limit it to the latter court. In England, the jurisdiction over divorces and alimony belongs exclusively to the ecclesiastical courts, and was never exercised by the Court of Chancery, except during the usurpation of Cromwell, when the spiritual courts were shut up. But by the constitution and laws of the State, jurisdiction is conferred equally upon the chancery and circuit courts ; and where one has not already taken jurisdiction, the other may do so. If these views be correct, neither of the grounds of demurrer are well taken. Let it be overruled, and the defendant ordered to answer in thirty days.